UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAKIN, ET AL.,

Plaintiffs,                           Case No. 17-cv-13088

v.                          UNITED STATES DISTRICT COURT
                                       JUDGE
BLOOMIN' BRANDS, INC., ET AL.,          GERSHWIN A. DRAIN

Defendants.

_____/

## OPINION AND ORDER GRANTING MOTION TO ENFORCE ATTORNEY LIEN [275] AND DENYING PLAINTIFFS' REVISED MOTION TO STRIKE CLAIMED ATTORNEY LIEN [282]

### I. INTRODUCTION

Plaintiffs Mrs. and Mr. Lakin hired Mr. Jonathan C. Hirsch to prosecute a civil action against Bloomin' Brands Inc., OSI/Flemings, and Gallagher Bassett Services, Inc. ("Defendants") on August 26, 2017. On January 24, 2019, Plaintiffs terminated Mr. Hirsch. Before the Court is Mr. Hirsch's Motion to Enforce Attorney Lien. ECF No. 275. He asserts that he is entitled to 65% of the 1/3 contingency fee that he contracted to with Plaintiffs for his work on this matter. Plaintiffs' Revised Motion to Strike Claimed Lien is also before the Court. ECF No. 282. Plaintiffs contend that they fired Mr. Hirsch for cause and therefore, he is not entitled to any compensation.

For the reasons discussed below, this Court finds that Mr. Hirsch is entitled to *quantum meruit* recovery of attorney's fees and costs. Mr. Hirsch is entitled to attorney's fees that equal 65% of the 1/3 contingency fee that he contracted to with Plaintiffs as well as $3,212.26 in costs.

## II. FACTUAL BACKGROUND

On March 15, 2016, Plaintiff Mrs. Lakin was dining with her husband, Plaintiff Mr. Lakin, and a friend at Flemings Prime Steakhouse. ECF No. 1, PageID.3. On the way to the bathroom, Mrs. Lakin fell on what was later identified as spilled water on the ground. *Id.* at PageID.4, 6. Mrs. Lakin sustained various back, hip, and buttock injuries that she alleges resulted from the slip and fall. *Id.* at PageID.6.

Plaintiffs hired Mr. Hirsch on August 26, 2017. ECF No. 285, PageID.6664. The parties agreed to pay Mr. Hirsch on a contingency fee basis in which Mr. Hirsch would receive 1/3 of Plaintiffs' net amount of recovery. *Id.* Plaintiffs filed their original complaint in this matter on September 20, 2017 against Defendants. ECF No. 1. This Court granted Plaintiffs leave to amend their complaint to add LaTonya Joplin as a Defendant on September 7, 2018. ECF No. 93.

On January 24, 2019, Plaintiffs filed a notice with this Court indicating that they terminated Mr. Hirsch as their attorney and hired Mark Teicher. ECF

No. 160.  Defendants Bloomin' Brands and Flemings filed their Motion for Summary Judgment on January 17, 2019.  ECF No. 153.  Defendants Gallagher and Joplin filed their Motions for Summary Judgment on January 18, 2019.  ECF Nos. 155, 157.  Thereafter, Defendants Gallagher and Joplin reached a settlement with Plaintiffs.  ECF No. 258.  This Court then granted in part and denied in part Defendants Bloomin' Brands and Flemings Motion for Summary Judgment on June 13, 2019.  ECF No. 244.  This Court's Order dismissed Mr. Lakin's loss of consortium claim against Defendants and therefore dismissed Mr. Lakin as a Plaintiff.  *See id.*

On June 22, 2019, Michael D. Elkins filed a Notice of Appearance on behalf of Mrs. Lakin, appearing as co-counsel with Mr. Teicher.  ECF No. 262.  After this Court ruled on Defendants' Motion for Summary Judgment, Plaintiff Mrs. Lakin and Defendants Bloomin' Brands and Flemings engaged in settlement discussions and reached a settlement agreement.  The parties filed an order of dismissal on July 15, 2019.  ECF No. 274.[1]

On July 22, 2019, Mr. Hirsch filed his Motion to Enforce Attorney Lien.  ECF No. 275.  Mr. Hirsch's Motion moves this Court to award him 65% of the 1/3 attorney fee for the case.  *Id.* at PageID.6288.  Plaintiffs

---

[1] Mr. Lakin filed a Notice of Appeal of the parties' July 15, 2019 Stipulated Order of Dismissal on August 7, 2019.  ECF No. 279.

responded in opposition to Mr. Hirsch's Motion on August 6, 2019. ECF No. 278. Plaintiffs also filed a Revised Motion to Strike Attorney Lien on August 10, 2019.[2] ECF No. 282. Mr. Hirsch filed a Response on August 14, 2019 and an amended Response on August 30, 2019 opposing Plaintiffs' Motion to Strike. *See* ECF Nos. 284, 285, respectively. An evidentiary hearing on this matter was held on September 26, 2019. Plaintiffs filed an argument memorandum on October 2, 2019. ECF No. 293. This Court held a hearing on the Motions the following day, October 3, 2019.

### III. LEGAL STANDARD

"[T]he law creates a lien of an attorney upon the judgment or fund resulting from his services." *Reynolds v. Polen*, 564 N.W.2d 467, 469 (Mich. Ct. App. 1997) (quoting *Ambrose v. Detroit Edison Co.*, 65 Mich.App. 484, 487–88)). Trial courts have discretion to determine whether to impose an attorney lien. *Id.* "Like other persons who provide services for a fee, an attorney who is discharged before completing contracted-for work is generally entitled to payment for valuable services rendered before the discharge. *Reynolds*, 564 N.W.2d at 471.

---

[2] Plaintiffs filed their first Motion to Strike Claimed Lien on June 22, 2019. ECF No. 263. This Court struck Plaintiffs' original Motion for failing to adhere to the Local Rules requirements for filing briefs. ECF No. 273.

Under Michigan law, an attorney on a contingent fee arrangement is entitled to *quantum meruit* recovery of attorney fees so long as he or she "does not engage in disciplinable misconduct prejudicial to the client's case or conduct contrary to public policy[.]" *Id.* If a client wrongfully terminates their attorney or if the attorney rightfully withdraws, then, the attorney can recover fees on a *quantum meruit* basis. *See Kensu v. Buskirk*, No. 13-10279, 2016 WL 6465890, at *2 (E.D. Mich. Nov. 1, 2016) (citation omitted)). Such a recovery is also available when the attorney is terminated by the client for cause—so long as he or she did not engage in disciplinable misconduct prejudicial to that client's case or contrary to public policy. *Id. Quantum meruit* is an "equitable doctrine" that is generally applied to prevent unjust enrichment. *Id*. This doctrine means "as much as he [or she] has deserved." *Id.* (quoting *Reisenfeld & Co. v. Network Group, Inc.*, 277 F.3d 856, 862 n.1 (6th Cir. 2002) (quoting *Black's Law Dictionary* 1255 (7th ed. 1999)).

## IV. DISCUSSION

### A. Mr. Hirsch's Termination

Plaintiffs argue that they terminated Mr. Hirsch for cause and that, therefore, Mr. Hirsch is not entitled to any fees. ECF No. 278, PageID.6345. They submitted, though, that an evidentiary hearing was appropriate for this Court to determine Mr. Hirsch's time and fees, if any, and to determine the

actual and reasonable amount owed to Mr. Hirsch, if any. *Id.* Mr. Hirsch asserts that he did not engage in any unprofessional conduct and that therefore he is entitled to reasonable attorney's fees. ECF No. 285, PageID.6634.

Plaintiffs advanced several examples of Mr. Hirsch's alleged professional misconduct in their Revised Motion to Strike Claimed Attorney's Lien (ECF No. 282), during the evidentiary hearing on September 26, 2019, and in their Argument Memorandum (ECF No. 293).

First and second, Plaintiffs claim that Mr. Hirsch never notified them that Defendants wanted to depose Msgr. Browne and James Gabriel. ECF No. 282, PageID.6421–23. At the evidentiary hearing, Mr. Lakin testified that he was first notified of the deposition on December 6, 2018. Third, Plaintiffs contend that Mr. Hirsch failed to advise defense counsel that Msgr. Browne was unable to attend the scheduled deposition on December 10, 2018. ECF No. 282, PageID.6423.

Mr. Hirsch claims that Plaintiffs never provided him with the addresses of either witness. ECF No. 285, PageID.6635. Further, Mr. Hirsch states that Plaintiffs gave him "strict orders" to not voluntarily produce the witnesses. *Id.* On December 27, 2018, Mr. Lakin sent Mr. Hirsch an email asserting, "if defense counsel requests that we agree for the Msgr. to voluntarily [sic] appear for his deposition at any time hereafter, our instructions are to absolutely reject

such request." *Id.* at PageID.6707. Mr. Hirsch also provided an email exchange between Mr. Lakin and Msgr. Browne on January 2, 2019 to further demonstrate that Plaintiffs "planned ways to avoid taking Msgr. Browne's deposition." *Id.* at PageID.6636, 6711. At the evidentiary hearing, Mr. Hirsch maintained that he was given specific instructions to "not cooperate with [defense] counsel" in providing a list of witnesses.

Fourth, Plaintiffs allege that Mr. Hirsch failed to meet with them when they requested meetings. ECF No. 282, PageID.6425–26. At the evidentiary hearing, Mr. Lakin specifically testified to Mr. Hirsch's lack of communication between January 2 and January 14, 2019—a period where "many things were happening concerning the case [.]" ECF No. 293, PageID.6827. Mr. Hirsch asserts that he met with Plaintiffs numerous times at Plaintiffs' home. ECF No. 285, PageID.6636. He also purportedly regularly communicated with Plaintiffs via telephone conversations and emails. *Id.* Mr. Hirsch further states that Plaintiffs' January request to meet was when he was starting a trial in Macomb County Circuit Court. *Id.* Mr. Hirsch offered dates to meet with Plaintiffs that worked around his trial schedule, but Plaintiffs allegedly refused his suggested dates and times. *Id.*

Fifth, Plaintiffs contend that Mr. Hirsch failed to send them copies of the pleadings that he filed with this Court. ECF No. 282, PageID.6436. Sixth,

Plaintiffs allege that Mr. Hirsch omitted important arguments or citations throughout their motion practice. *Id.* at PageID.6427. Mr. Hirsch argues that Plaintiffs did not allow him to file any pleadings without Mr. Lakin's approval. ECF No. 285, PageID.6638. Thus, Plaintiffs' claims of inadequate pleadings reflect Mr. Lakin's work. *Id.* At the hearing on the Motions, Mr. Hirsch affirmed that he typed up any pleadings he received from Mr. Lakin.

Seventh[3], Plaintiffs state that Mr. Hirsch ignored their request that he only schedule depositions when they were able to attend them. ECF No. 282, PageID.6427. Mr. Hirsch notified Plaintiffs on September 14, 2018, a date which Mr. Lakin had a scheduling conflict, that he conducted the depositions of Seka Ristic and Daniel Holmes due to "previous difficulty in scheduling [the] witnesses." ECF No. 282-5, PageID.6473. At the evidentiary hearing, Mr. Lakin testified that he wanted to be at depositions to offer assistance; he also explained that he had a right to be there as a litigant. Mr. Hirsch contends that Plaintiffs' weekly travel plans and doctor appointments made scheduling difficult. ECF No. 285, PageID.6637. Therefore, he was unable to schedule every deposition when Plaintiffs were available. *Id.*

Eighth, Plaintiffs contend that Mr. Hirsch failed to file a motion *in limine* requesting a spoliation jury instruction after he agreed that he would

[3] Plaintiffs incorrectly labeled this allegation as Illustration Six.

file such motion. ECF No. 282, PageID.6431. Mr. Hirsch states that he had begun a draft of the motion when Plaintiffs discharged him. ECF No. 285, PageID.6638. He did not start drafting it sooner because it would not have been appropriate until after the close of discovery. *Id.*

Ninth, Plaintiffs allege that Mr. Hirsch misrepresented to them his relationship with and the actual expertise of expert witness Mr. Steven Ziemba. ECF No. 282, PageID.6432. Plaintiffs explain that Mr. Ziemba was selected "without any notice to the [Plaintiffs] as to their input as to the selection." ECF No. 293, PageID.6832. They allege that Mr. Ziemba's "research and deposition was below standard, and that his testimony had virtually no value from an expert's stand point." *Id.* at PageID.6835. This selection, therefore, demonstrates Mr. Hirsch's "lack of diligence and professionalism, in failing to assist his expert, by providing him with full facts of the case, and more specifically in the failure to going over his expert's proposed testimony in preparation for his deposition." *Id.*

Tenth, Plaintiffs assert that Mr. Hirsch misrepresented that he ordered and paid for the deposition transcript of Gallagher Bassett's adjuster, Mr. Kenneth Ligotti. ECF No. 282, PageID.6432. Plaintiffs attached an email to their Motion that was sent to their new attorney, Mr. Elkins, which includes an invoice for Mr. Ligotti's deposition transcript—costing a total of $786.00.

ECF No. 278-1, PageID.6351.  Mr. Hirsch submitted a copy of his check in his Supplemental Brief on September 19, 2019.  ECF No. 289, PageID.6749. At the evidentiary hearing, Mr. Hirsch testified that he did not follow up on the check once he mailed it.  He also does not have a receipt of the cash checked.  A copy of this check was not included in Mr. Hirsch's amended Response to the Court on August 30, 2019.  *See* ECF No. 285, PageID.6670.

Eleventh, Plaintiffs argue that Hirsch failed to order or otherwise obtain medical records subpoenaed by the Defendants.  ECF No. 282, PageID.6433. Twelfth, Plaintiffs state that Mr. Hirsch did not obtain medical records from Mrs. Lakin's doctors.  *Id.* at PageID.6435.  Mr. Hirsch claims that such a task was expensive and not critical.  ECF No. 285, PageID.6638.  He further clarifies that if trial was approaching, he could have easily ordered the appropriate medical records.  *Id.*

Thirteenth, Plaintiffs claim that Mr. Hirsch used unclear black and white photocopies of the restaurant premises during depositions, which negatively impacted the depositions.  ECF No. 282, PageID.6436.  Plaintiffs assert that they previously provided Mr. Hirsch with color photographs.  *Id.* Plaintiffs submitted Mrs. Lakin's deposition transcript, which supports Plaintiffs' contention that Mr. Hirsch used black and white photocopies because his color copier broke.  ECF No. 282-10, PageID.6517–18.

Fourteenth, Plaintiffs allege that Mr. Hirsch did not provide Mrs. Lakin with the assistance that she requested in responding to Defendants' discovery requests of her social media accounts. ECF No. 282, PageID.6427. Plaintiffs claim that Mr. Hirsch's assistance was insufficient, as his "bare bones" email from November 20, 2018 did not address her questions. ECF No. 282-13, PageID.6552, 6558. Mr. Lakin subsequently sent multiple emails to Mr. Hirsch, requesting that Defendants' requested scope of discovery be limited. *Id.* at PageID.6653. Mr. Hirsch responded to Mr. Lakin's concerns with the Motion to Compel on November 29, 2018. *Id.* at PageID.6553.

Fifteenth, Plaintiffs state that Mr. Hirsch used improper language to and regarding Plaintiffs. ECF No. 282, PageID.6437. Specifically, Plaintiffs took issue with Mr. Hirsch raising concerns of Mr. Lakin's consumption of wine during the night of accident. *Id.* at PageID.6438 ("This was another part of Hirsch's attempt to scare his clients into taking a quick and cheap settlement, a tactic the law calls "overreaching.""). In Mr. Hirsch's email to Plaintiffs on October 11, 2018, he explains that Mr. Lakin's decision to drive while intoxicated was not a "major issue, but certainly one that will be exploited by the defense." ECF No. 282-12, PageID.6548.

Plaintiffs also argue that Mr. Hirsch used "pejorative words" in response to their request to not use a female facilitator. ECF No. 293,

PageID.6837.  In his email to Plaintiffs, Mr. Hirsch wrote "I obviously will live with it.  But to discard one of the best facilitators and former judge in town because of her gender is short sighted, ignorant, distasteful and repugnant."  ECF No. 282-12, PageID.6549.  Mr. Hirsch ultimately selected the facilitator of Plaintiffs' choosing.  ECF No. 285, PageID.6638.

Sixteenth, Plaintiffs assert that Mr. Hirsch failed to prepare the facilitation summary that was due in February 2019.  ECF No. 282, PageID.6440.  Lastly, Plaintiffs purport that Mr. Hirsch ignored Plaintiffs' emails to discuss the facilitation summary.  *Id.*  Mr. Hirsch emailed Plaintiffs on December 12, 2018, asking Mr. Lakin to confirm an earlier conversation in which he indicated he would be writing the facilitation summary "in its entirety."  ECF No. 282-14, PageID.6572.  Mr. Lakin responded later that evening, explaining that he had the time to prepare the summary, but that he expected Mr. Hirsch to prepare a "case evaluation or facilitation summary." *Id.*  He then emailed Mr. Hirsch on January 2, 2019 stating that he was "working on a draft of the facilitation summary," but that he needed deposition transcripts from Mr. Hirsch to complete it.  *Id.* at PageID.6572.

Under Michigan law, a client has an "implied right" to discharge an attorney.  *Plunkett & Cooney, P.C. v. Capitol Bancorp Ltd.*, 536 N.W.2d 886, 889 (Mich. Ct. App. 1995).  However, often a client's termination of an

attorney will not be "wrongful" and the attorney's conduct will also not be "wrongful" to the extent that it bars *quantum meruit* recovery of attorney fees. *Reynolds v. Polen*, 564 N.W.2d 467, 471 (Mich. Ct. App. 1997). "[If] a discharged attorney does not engage in disciplinable misconduct prejudicial to the client's case or conduct contrary to public policy . . . a trial court should take into consideration the nature of the services rendered . . . and award attorney fees on a quantum meruit basis." *Id.*

Plaintiffs argue that they discharged Mr. Hirsch on January 14, 2019 for cause and that, therefore, Mr. Hirsch is not entitled to *quantum meruit* recovery of attorney fees. Plaintiffs allege, through their various illustrations cited above, that Mr. Hirsch engaged in unprofessional conduct throughout his representation of them. They argue that Mr. Hirsch's representation fell below the standard required of an attorney under the Michigan Rules of Professional Conduct and the standard practice in handling a negligence slip and fall case. ECF No. 293, PageID.6840–41. Mr. Hirsch alternatively asserts that he was not unprofessional and worked hard on Plaintiffs' case despite consistent ridicule by Plaintiffs. ECF No. 285, PageID.6638.

Both Plaintiffs and Mr. Hirsch present credible arguments to support their perspective of the attorney-client relationship. Assuming the truth of Plaintiffs' allegations, under the circumstances presented here, this Court

concludes that they do not rise to the level of "disciplinable misconduct prejudicial to the client's case or conduct contrary to public policy," *Reynolds*, 564 N.W.2d at 471, such that Mr. Hirsch should be denied attorney fees. The Court ultimately believes Mr. Hirsch over Plaintiffs on the above mentioned factual disputes during the tenure of the parties' attorney-client relationship.

The Court notes that many of Plaintiffs' illustrations involve allegations that Mr. Hirsch was unresponsive to their communication requests. Mr. Hirsch alleges that he "regularly kept the [Plaintiffs] informed by home visits, telephone conversations and emails." ECF No. 285, PageID.6637. At the hearing, Mr. Hirsch further stated that the "lack of communication claims" were "unfounded." While Plaintiffs argued that "no value" was added by Mr. Hirsch's activity as their attorney, Mr. Hirsch responded by explaining that he set up the case for an eventual settlement offer. At the hearing, this Court emphasized that from a time perspective, Mr. Hirsch contributed to 2/3 of the work in the instant case before he was discharged. Specifically, 159 of Plaintiffs' entries on the case's docket sheet are submitted under Mr. Hirsch's name. These entries demonstrate that the bulk of the legal work—including extensive discovery and motion practice—was undertaken by Mr. Hirsch.

Courts in this district have previously determined that allegations of an attorney's deficient communication with a client do not rise to the level of

"disciplinable misconduct prejudicial to the client's case or conduct contrary to public policy" such that the discharged attorney should be disqualified from receiving a *quantum meruit* fee. *See, e.g.*, *Mitchell v. City of Warren*, No. 09-11480, 2012 WL 5334133 (E.D. Mich. Oct. 26, 2012) (concluding that an attorney's failure to communicate did not prejudice Plaintiff's case, which was in its earliest stages). Assuming the truth of Mr. Hirsch's allegations, as well as the submitted evidence indicating his communication with Plaintiffs while he was retained as their counsel, this Court similarly concludes that the lack of communication in the instant case does not rise to the level which would disqualify Mr. Hirsch from receiving a *quantum meruit* fee.

After reviewing both parties' arguments and the evidence submitted by the parties to support their contentions, this Court, pursuant to *Reynolds*, will award Mr. Hirsch attorney fees in the instant case on a *quantum meruit* basis, as well as additional costs incurred in this matter.

### B. *Quantum Meruit* Recovery

This Court must next determine the appropriate *quantum meruit* fee for Mr. Hirsch's representation of the Plaintiffs. Under Michigan law, an attorney in a personal injury case should be compensated for the "completed work on the basis of evaluating as closely as possible the actual deal struck between the client and the attorney[.]" *Island Lake Arbors Condo. Ass'n v. Meisner &*

*Assocs., PC*, 837 N.W.2d 439, 446 (Mich. Ct. App. 2013) (quoting *Reynolds*, 564 N.W.2d at 472)).  The *Reynolds* court explained that an attorney who is wrongfully discharged or who rightfully withdraws is "entitled to compensation for the reasonable value of his services based upon *quantum meruit*, and not the contingent fee contract."  *Reynolds*, 564 N.W.2d at 470.  A contract which includes a contingent fee agreement, though, "may bear relevance to the computation of a lawyer's value to a case by defining the parties' expectations of that value."  *Island Lake*, 837 N.W.2d at 447.  A discharged attorney, then, is restricted to a *quantum meruit* recovery that is capped at the maximum amount of attorney fees provided in the parties' contingency fee arrangement.  *Id.*

In personal injury cases, attorneys are prohibited from recovering fees which exceed the public policy limit stated in MCR 8.121.  *Id.* at 401.  MCR 8.121 provides that if an attorney enters into a contingency fee agreement, the receipt, retention, or sharing of the compensation which is equal to or less than one-third the net amount recovered is deemed fair and reasonable.  MCR 8.121(A)-(C).  A fee limitation which derives directly from the parties' contract itself "respects both the parties' freedom of contract and the client's ability to change counsel."  *Id.* at 401.  In the instant case, Mr. Hirsch's *quantum meruit* recovery, then, must be limited to the maximum percentage

he would have received under his contract with the Plaintiffs: 1/3 of the net amount recovered. *See* ECF No. 285, PageID.6664.

*Quantum meruit* recovery is generally determined by multiplying the number of hours an attorney worked by a reasonable hourly fee. *Reynolds v. Polen*, 564 N.W.2d 467, 469 (Mich. Ct. App. 1997). In addition, trial courts typically consider the following nonexclusive factors:

> (1) the professional standing and experience of the attorney; (2) the skill, time and labor involved; (3) the amount in question and the results achieved; (4) the difficulty of the case; (5) the expenses incurred; and (6) the nature and length of the professional relationship with the client.

*Id.* at 472 (citing *Crawley v. Schick*, 211 N.W.2d 217 (1973)).

Mr. Hirsch states that his hourly rate is $250 and that he worked a total of 276.1 hours on the case, resulting in $69,025.00 in attorney's fees. ECF No. 285, PageID.6634. He submitted the 2017 State Bar of Michigan Attorney Income and Billing Rate Summary Report, which reported that the median rate for an attorney with his experience—27 years—is $250.00 per hour. *Id.* at PageID.6719. Further, the median hourly rate charged by plaintiffs' personal injury attorneys is $350.00. *Id.* at PageID.6721. The Court therefore concludes that $250.00 is Mr. Hirsch's reasonable hourly rate.

Mr. Hirsch asserts that he expended 276.1 hours working on Plaintiffs' case before Plaintiffs terminated him. ECF No. 285, PageID.6693. Mr.

Hirsch submitted a detailed log of his hours to this Court, along with a description of what he spent his time on. *Id.* at PageID.6683–93. He previously submitted a log of 744.2 hours to this Court on August 14, 2019. ECF No. 284, PageID.6596. Mr. Hirsch testified that this error was an honest mistake and one that he immediately recognized, prompting him to submit his amended Response to Plaintiff's Motion two weeks later.

This Court does not dispute the number of hours Mr. Hirsch claims that he worked on Plaintiffs' case nor the fact that Mr. Hirsch submitted two vastly different approximations of hours. However, this Court must also look to the parties' contractual terms when determining a reasonable compensation for Mr. Hirsh's services rendered. In this case, as in *Reynolds* and *Island Lake*, those terms included a contingent fee arrangement. It would be "inappropriate" to calculate Mr. Hirsch's *quantum meruit* recover on the basis of the number of hours worked multiplied by his reasonable hourly fee given the parties' contract. *Island Lake*, 837 N.W.2d at 448.

Pursuant to *Island Lake*, then, this Court must determine what amount of Plaintiffs' recovery would be attributable to Mr. Hirsch's work. *Id.* Mr. Hirsch represented Plaintiffs from August 26, 2017 until January 24, 2019—

a total of 17 months.[4]  ECF No. 160.  Mr. Teicher has represented Plaintiffs

from January 24, 2019 until the present—a total of nine months.  *Id.*  Mr.

Elkins has represented Mrs. Lakin from June 22, 2019 until the present—a

total of four months.   Mr. Hirsch filed Plaintiffs' initial and amended

complaints, handled discovery, and filed and responded to several motions *in

limine* on Plaintiffs' matter, among other matters.  Mr. Teicher has represented

Plaintiffs on summary judgment and settlement negotiations.  Mr. Elkins has

also represented Mrs. Lakin during settlement negotiations.   In total, Mr.

Hirsch represented Plaintiffs for about 2/3 of the litigation process, while Mr.

Teicher has been representing Plaintiffs for the remaining 1/3 of the process,

and Mr. Elkins has represented Mrs. Lakin for an even shorter period of the

settlement process.[5]  Therefore, this Court finds that Mr. Hirsch is entitled to

65% of the 1/3 contingency fee agreed upon in his contract with Plaintiffs.

---

[4] Mr. Hirsch states that he represented Plaintiffs from March 16, 2017 until
January 24, 2019—a total of 22 months—because he handled pre-litigation
matters. ECF No. 285, PageID.6633. However, the parties signed a contract
for Mr. Hirsch's legal services on August 26, 2017.  *Id.* at PageID.6664. The
Court will therefore presume that Mr. Hirsch began his legal representation
of Plaintiffs on August 26, 2017.

[5] This matter has not yet concluded. The parties are currently disputing a
settlement agreement.  ECF No. 276.  A hearing on Defendants' Motion for
Order to Enforce Settlement is scheduled for October 30, 2019.

## C. Additional Costs

In addition to attorney's fees, Mr. Hirsch asserts that his firm expended $3,998.26 in costs. ECF No. 285, PageID.6634. However, Mr. Hirsch concedes that his firm has not paid all of these costs. *Id.* at PageID.6635.

Plaintiffs presented evidence to this Court that Mr. Hirsch had not paid a $786.00 transcript fee from court reporter Cindy Afanador. ECF No. 278-1, PageID.6351. Mr. Hirsch submitted a copy of his check in his Supplemental Brief. ECF No. 289, PageID.6749. This copy was not included in his original filing to the Court. *See* ECF No. 285, PageID.6670. The Court is not satisfied that there is sufficient evidence to prove Mr. Hirsch paid this cost. At the evidentiary hearing, Mr. Hirsch testified that he did not follow up on the check once he mailed it nor did he have a receipt of the cashed check. Therefore, at most, Mr. Hirsch is entitled to a total of $3,212.26 in costs in addition to the above-mentioned attorney's fees. The additional costs presented in Mr. Hirsch's amended Response are supported with sufficient evidence—including a filing fee, liability expert payment, and other court reporting payments. *See id.* at PageID.6634.

## V. CONCLUSION

For the reasons discussed herein, this Court concludes that Mr. Hirsch is entitled to *quantum meruit* recovery. When this case comes to a final

resolution, this Court orders Plaintiffs to pay Mr. Hirsch 65% of the 1/3 contingency fee that they contracted to with Mr. Hirsch, as well as $3,212.26 in costs.

Therefore, IT IS HEREBY ORDERED that Mr. Hirsch's Motion to Enforce Attorney Lien [#275] is GRANTED.

IT IS FURTHER ORDERED that Mr. Hirsch is entitled to 65% of the 1/3 contingency fee that he contracted to with Plaintiffs upon this case's resolution, as well as $3,212.26 in costs in this matter.

IT IS FURTHER ORDERED that Plaintiffs' Revised Motion to Strike Claimed Lien [#282] is DENIED.

SO ORDERED.

Dated:         October 18, 2019

/s/Gershwin A. Drain
HON. GERSWHIN A. DRAIN
United States District Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
October 18, 2019, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager